# Beall v. The State.

## Indictment for Burglary.

1. *Ownership of building burglariously entered, how alleged.*—Our statutes have not changed or abrogated the common law rule, that in indictments for burglary the ownership of the building entered must be precisely laid, and proved as averred.

2. *Same ; what insufficient*--An indictment for burglary, describing the house in which the offense was committed as "the property of the estate of the late John Tate," does not contain any averment of ownership, and is fatally defective. (Overruling on this point, *Murray & Bell* v. *The State*, 48 Ala. 665 ; *Anderson* v. *The State, Ib.* 675).

APPEAL from Circuit Court of Greene.

Tried before Hon. LUTHER R. SMITH.

The appellant, and two others who do not appeal, were indicted for burglary.

The indictment contained two counts. The first count charges that the defendants "broke into and entered, with the intent to steal, the dwelling house of the late John Tate,

[Beall v. The State.]

said house now, and at the time of the offense committed, belonging to the estate of the late John Tate," &c., &c.

The second was like the first, except that it alleged that the house was "the dwelling house of the estate of the late John Tate."

Both counts allege that the felonious intent with which the burglary was committed was consummated by a larceny of goods in the house.

On the trial it appeared that Tate, some time previous to the burglary, had moved out of the house, on account of back water from the river, and died a few hours before the commission of the offense. Tate died unmarried and childless.

The defendant requested the court, in writing, to charge the jury, if they believed from the evidence that Tate was dead at the time the burglary was committed, and died unmarried and childless, they could not convict the defendant. The court refused to give this charge, and the defendant duly excepted.

SNEDICOR, COCKERELL and HEAD, for appellant.

JOHN W. A. SANFORD, Attorney General, contra.

BRICKELL, C. J.—The indictment is for burglary, averring a breaking and entry, in the first count, " of the dwelling house of the late Jno. Tate, said house now, and at the time of the offense committed, belonging to the estate of the late Jno. Tate;" and in the second count, it is averred to have been " the dwelling house of the estate of the late Jno. Tate." The common law requires that an indictment for burglary must lay with precision the ownership of the house in which the offense has been committed, and the proof must conform to the averment. 2 Lead. Cr. Cases, 53; 2 Bish. Cr. Pr. § § 135–6–7–8 ; 2 Whart. Am. Cr. Law, § 1555, et seq.; 1 Russ. Crimes, 806. The statutes have not abrogated or modified this rule ; on the contrary, the form of indictment prescribed contains an express averment of ownership. R. C. p. 811, form No. 35.

There is no averment of ownership in either count of this indictment. That which is intended as such an averment shows on its face that the ownership is not disclosed. If the person described as Jno. Tate is dead, and that is the intendment, and during life was the owner of the dwelling, on his death it devolved on his personal representatives, heirs, or devisees. Who these are is not averred. In Pleasant v.

[Beall *v.* The State.]

*State*, 17 Ala. 190, the indictment described the defendant as a slave, "the property of the late William Copeland." DARGAN, C. J., said : "Is the ownership of the accused sufficiently averred ?    The allegation is that Pleasant, a slave, 'the property of the late William Copeland.'    In the sense in which the adjective *late* is here used, it means existing not long ago, but now departed this life.    This is the meaning all would give it, and no doubt is the meaning intended to be attached to it by the pleader.    The accused is therefore alleged to be the property of one not in life. This cannot be, for the dead can own no property.    Death strips us of all rights and title to property, and casts them on the living, who alone can own property.    The ownership of the accused is therefore not alleged, and the indictment is consequently defective."    It must be observed of this case, that the ownership of the accused, nor his *status*, was an ingredient of the offense with which he was charged.    The only purpose of its averment was, that in the event of con-viction, it should be ascertained to whom the State must make compensation for the loss of property on his execution. The house broken and entered must not be the house of the accused, into which he had the lawful right of entry.    The ownership is as essential as the ownership of goods on an indictment for larceny, or on any other indictment for an offense against property.    It is a well known rule of criminal pleading, that when it becomes necessary to aver the owner-ship of property which resided in one dead, while living, if it is personal property, passing to the personal representa-tive, of which he has custody, actually or constructively, the ownership must be laid in him.    If real property, then in the heir or devisee; and it is generally sufficient to aver it in the actual possessor.    An illustration which clings to the memory of the lawyer, is given by Lord Hale : "If A, dying, be buried, and B opens the grave in the night time and steals the winding sheet, the indictment cannot suppose them the goods of the dead man, but of the executors, administra-tors, or ordinary, as the case falls out."    2 Hale's Pleas Cr. 181.    The indictment was insufficient, and the con-viction erroneous.    For aught that appears on the face of this indictment, the accused may have been the owner of the dwelling house.    He may have been the heir, or devisee, or the personal representative of the deceased, having its possession, and the lawful right of entry.    Such a presumption is not excluded by the averments.    The cases of *Anderson* v. *State*, 48 Ala. 665, and *Murray & Bell* v. *State, Ib.* 675, it may be, induced the framing of the indictment in its

present form.   These cases cannot be supported on princi-
ple or precedent, and are introductive of a laxity in criminal
pleading that ought not to be tolerated, and are consequently
overruled.

The judgment is reversed and the cause remanded, but
the prisoner will remain in custody until discharged by due
course of law.